AO 241
(Rev. 12/04)

. 0 8 - 2 4 0    Page 2

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
## HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| **United States District Court** | District: | |
|---|---|---|
| Name (under which you were convicted): <br> Kevin Epperson | | Docket or Case No.: |
| Place of Confinement : <br> Delaware Correctional Center | Prisoner No.: | |
| Petitioner (include the name under which you were convicted) <br> Kevin Epperson | Respondent (authorized person having custody of petitioner) <br> v. Perry Phelps, warden | |
| The Attorney General of the State of DE    Beau Biden | | |

FILED

APR 25 2008

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Scanned
IFI

### PETITION

1.  (a) Name and location of court that entered the judgment of conviction you are challenging:

Superior Court New Castle County Willmin-
gton DE

(b) Criminal docket or case number (if you know): 9408004296

2.  (a) Date of the judgment of conviction (if you know): March. 1996

(b) Date of sentencing: May 1996

3.  Length of sentence:  52 yrs

4.  In this case, were you convicted on more than one count or of more than one crime?    ☑ Yes    ☐ No

5.  Identify all crimes of which you were convicted and sentenced in this case: Unlawful sexual
contact 2nd Degree 2yrs 1st Degree Kidnapping
20yrs suspended after 12yrs. Habitual offender
4214(a) 40yrs 8yrs probation

6.  (a) What was your plea? (Check one)

☑ (1)    Not guilty        ☐ (3)    Nolo contendere (no contest)

☐ (2)    Guilty            ☐ (4)    Insanity plea

Petitioner plead not guilty to all
charges above but got found guilty
illegally.

AO 241
(Rev. 12/04)

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did

you plead guilty to and what did you plead not guilty to?

(c) If you went to trial, what kind of trial did you have? (Check one)

☑ Jury    ☐ Judge only

7.  Did you testify at a pretrial hearing, trial, or a post-trial hearing?

☑ Yes    ☐ No

8.  Did you appeal from the judgment of conviction?

☑ Yes    ☐ No

9.  If you did appeal, answer the following:

(a) Name of court: Delaware Supreme Court

(b) Docket or case number (if you know): 214, 1996

(c) Result: affirmed

(d) Date of result (if you know): Feb 6, 1997

(e) Citation to the case (if you know): 692 A2d 412

(f) Grounds raised:

Ineffective assistance of Counsel
lack of element pursuant to 1st Degree Kidnap

(g) Did you seek further review by a higher state court?    ☐ Yes    ☑ No

If yes, answer the following:

(1) Name of court:

(2) Docket or case number (if you know):

(3) Result:

(4) Date of result (if you know):

AO 241
(Rev. 12/04)

(5) Citation to the case (if you know):

(6) Grounds raised:

(h) Did you file a petition for certiorari in the United States Supreme Court?   ☐ Yes   ☑ No

If yes, answer the following:

(1) Docket or case number (if you know):

(2) Result:

(3) Date of result (if you know):

(4) Citation to the case (if you know):

10.   Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?   ☑ Yes   ☐ No

11.   If your answer to Question 10 was "Yes," give the following information:

(a)   (1) Name of court:   N/A

(2) Docket or case number (if you know):   Don't Know

(3) Date of filing (if you know):   Don't Know

(4) Nature of the proceeding:   There not arguments I am arguing

(5) Grounds raised:   N/A

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes   ☑ No   N/A

(7) Result:

(8) Date of result (if you know):   N/A

(b) If you filed any second petition, application, or motion, give the same information:

    (1) Name of court:

    (2) Docket or case number (if you know):    N/A

    (3) Date of filing (if you know):    N/A    Don't Know

    (4) Nature of the proceeding:    Not arguments I am bringing

    (5) Grounds raised:    in front of Court

    (6) Did you receive a hearing where evidence was given on your petition, application, or motion?

    ☐   Yes    ☑ No

    (7) Result:    N/A

    (8) Date of result (if you know):    N/A

(c) If you filed any third petition, application, or motion, give the same information:

    (1) Name of court:

    (2) Docket or case number (if you know):    Don't Know

    (3) Date of filing (if you know):    These arguments filed in

    (4) Nature of the proceeding:    petition have not been argued

    (5) Grounds raised:    specifically

12. For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the <u>facts</u> supporting each ground.

<u>CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.</u>

**GROUND ONE:** Confrontation Clause violation Pursuant to Sixth Amendment

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
Confrontation Clause was compromised Statement violated the Confrontation Clause because where Testimonial statements are at issue the only indicium of reliability sufficient to satisfy constitutional demands is confrontation. Deprived of a meaningful opportunity to present a complete defense

(b) If you did not exhaust your state remedies on Ground One, explain why: N/A

N/A

(c) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐    No ☑

(2) If you did <u>not</u> raise this issue in your direct appeal, explain why: Court appointed lawyer choose to over look constitution violation manifest on it's face. (showing prejudice)

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a <u>post-conviction motion</u> or petition for habeas corpus in a state trial court?        Yes ☑  No ☐

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: Post conviction relief

Name and location of the court where the motion or petition was filed: Superior Court New Castle County Wilm, Del

Docket or case number (if you know): Cr FD 9408009291

Date of the court's decision: October 16, 2007

Result (attach a copy of the court's opinion or order, if available): N/A

N/A

(3) Did you receive a hearing on your motion or petition?

Yes ☐  No ☑

(4) Did you appeal from the denial of your motion or petition?

Yes ☑  No ☐

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes ☑  No ☐

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: Delaware Supreme Court Dover Del

Docket or case number (if you know): No 558, 2007

Date of the court's decision: March 24, 2008

Result (attach a copy of the court's opinion or order, if available): _____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: N/A

N/A

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One: none

N/A

**GROUND TWO:** Brady violation fourteenth Amendment violation

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): Brady evidence did not become available to the defense before or during trial because petitioner could not effectively utilize such material at trial. The error deprived

Page 8

petitioner not to be able to obtain comparable evidence by other available means, To present a complete defense was denied.

(b) If you did not exhaust your state remedies on Ground Two, explain why: _N/A_

_N/A_

(c) **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ❑  No ☑

(2) If you did <u>not</u> raise this issue in your direct appeal, explain why: Court appointed lawyer chouse to over look constitution violation, manifest on it's face (Prejudice)

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a <u>post-conviction motion</u> or petition for habeas corpus in a state trial court?

Yes ☑  No ❑

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: Postconviction relief

Name and location of the court where the motion or petition was filed: Superior Court New Castle County Wilm, Del

Docket or case number (if you know): Cr ID NO, 9408009291

Date of the court's decision: October 16, 2004

Result (attach a copy of the court's opinion or order, if available): _N/A_

(3) Did you receive a hearing on your motion or petition?

Yes ❑  No ☑

(4) Did you appeal from the denial of your motion or petition?

Yes ☑  No ❑

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes ☑  No ❑

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: Delaware Supreme Court Dover Del

Page 9

Docket or case number (if you know): _____ 558, 2007 _____

Date of the court's decision: _____ March 27, 2008 _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this
issue: _____

_____

_____ N/A _____

_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative
remedies, etc,) that you have used to exhaust your state remedies on Ground Two: _____

Petitioner filed a habeas Corpus
many years ago on Chain of Custody
Pursuant to Brady

**GROUND THREE:** Impeachment evidence extends
to Brady. Fourteenth Amendment violation

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
Petitioner has a right to impeach cred-
ibility of an adverse witness by introducing
evidence that witness made statements incon-
sistent with testimony at trial. Inconsist-
ent statement is statements offered not for
truth of matter assered.

(b) If you did not exhaust your state remedies on Ground Three, explain why: __none__

_____

_____ N/A _____

_____

(c) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐  No ☑

(2) If you did not raise this issue in your direct appeal, explain why: Court appointed
lawyer choose to over look constitution
violation manifest on it's face (prejudice)

Page 10

**(d) Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?        Yes ☑    No ☐

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _post conviction relief_

Name and location of the court where the motion or petition was filed: _Superior Court New Castle County_

Docket or case number (if you know): _94 0600 9291_

Date of the court's decision: _October 16, 2007_

Result (attach a copy of the court's opinion or order, if available): _____
_____
_____

(3) Did you receive a hearing on your motion or petition?
    Yes ☐    No ☑

(4) Did you appeal from the denial of your motion or petition?
    Yes ☑    No ☐

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?
    Yes ☑    No ☐

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _Delaware Supreme Court Dover Del 19901_

Docket or case number (if you know): _SSB, 2007_

Date of the court's decision: _March 27, 2008_

Result (attach a copy of the court's opinion or order, if available): _____
_____
_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: _____
_____ N/A _____
_____ N/A _____

**(e) Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three: _none_
_____ N/A _____

**GROUND FOUR:** _N/A_

(a) Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

_N/A_

(b) If you did not exhaust your state remedies on Ground Four, explain why: _N/A_

_N/A_

(c) **Direct Appeal of Ground Four:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ❑   No ❑  _N/A_

    (2) If you did not raise this issue in your direct appeal, explain why: _N/A_

(d) **Post-Conviction Proceedings:**

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?    Yes ❑  No ❑  _N/A_

    (2) If your answer to Question (d)(1) is "Yes," state:

    Type of motion or petition: _N/A_

    Name and location of the court where the motion or petition was filed: _N/A_

    Docket or case number (if you know): _N/A_

    Date of the court's decision: _N/A_

    Result (attach a copy of the court's opinion or order, if available): _N/A_

    (3) Did you receive a hearing on your motion or petition?

        Yes ❑   No ❑  _N/A_

    (4) Did you appeal from the denial of your motion or petition?

        Yes ❑   No ❑  _N/A_

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes ❑  No ❑

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _*none*_

Docket or case number (if you know): _*N/A*_

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_*N/A*_

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: _____

_*N/A*_

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four: _*none*_

_*N/A*_

13. Please answer these additional questions about the petition you are filing:

(a) Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?    Yes ☑  No ❑

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them: _____

_*N/A*_

(b) Is there any ground in this petition that has not been presented in some state or <u>federal</u> court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them: _Sixth Amendment or fourteenth Amendment because petitioner found out through research he could bring to federal Court_

14. Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?    Yes ❑  No ☑

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinion or order, if available. *None*

_N/A_

15. Do you have any petition or appeal <u>now pending</u> (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?    Yes ❏    No ☑

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised. _____

_N/A_

16. Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing: _N/A_

(b) At arraignment and plea: _N/A_

(c) At trial: _Kevin J Oconnell Bar ID# 3326 901 Shipley Street suite 300 Wilmington Del 19801_

(d) At sentencing: _Same person_

(e) On appeal: _Anthony A Figliola - court appointed_

(f) In any post-conviction proceeding: _none_

_N/A_

(g) On appeal from any ruling against you in a post-conviction proceeding: _N/A_

_N/A_

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?    Yes ❏    No ☑

(a) If so, give name and location of court that imposed the other sentence you will serve in the future: _None_

(b) Give the date the other sentence was imposed: _N/A_

(c) Give the length of the other sentence: _N/A_

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future? Yes ☐ No ☑

18. TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.* The absence of facts that are prerequisites for the sentence given to petitioner deprived the probative force of relevant evidence that was either wrongly excluded or unavailable. No reasonable juror would have found him guilty beyond a reasonable doubt. All procedural bars are inadmissible based on these facts. A fundamental Miscarriage of Justice will result if claims are not heard.

Sixth and fourteenth Amendment claims show petitioner was deprived of a meaningful opportunity to present a complete defense. The absence of facts that are prerequisites for the sentence given to petitioner were unduly prejudicial. The probative force of relevant evidence that was either wrongly excluded or unavailable deprived petitioner of Constitution protection. No reasonable juror would have found him guilty beyond a reasonable doubt. See memorandum of law to support facts

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1) A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of —

(continued...)

Therefore, petitioner asks that the Court grant the following relief: Petitioner would like for his convictions to be vacated base on constitutional error

or any other relief to which petitioner may be entitled.

_____

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on

4/24/08 _____ (month, date, year).

Executed (signed) on 4/24/08 _____ (date).

_Kevin Epperson_ pro-se

Signature of Petitioner

---

*(...continued)

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

## Certificate of Service

I, _Kevin S Epperson_ ,hereby certify that I have served a true
And correct cop(ies) of the attached: _2254 Petition_

_____ upon the following

parties/person (s):

TO: _Clerk of the Court_        TO: _____
_844 King street_
_Lockbox 18_
_Wilm Del 19801_

TO: _office of Attorney General_ TO: _____
_Carvel state office Bldg_
_820 N french st._
_Wilm, Del 19801_

BY PLACING SAME IN A SEALED ENVELOPE, and depositing same in the United
States Mail at the Delaware Correctional Center, Smyrna, DE 19977.

On this _24th_  day of _April_ _____ ,200 _8_

_Kevin Epperson_

I/M: *Kevin S. Epperson*
SBI# *156562* UNIT *C Bldg*
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977



Legal Mail

Clerk of the Court
844 King street
Lock box 18
wilm De
19801

In The United States District Court
For The District of Delaware

.08-240

Kevin S Epperson
    Petitioner

CRA NO. IN94-08-1484,1485
ID 9408C0929(

    ✓

Perry Phelps, Warden and
Beau Biden Attorney
General of the State
of Delaware

FILED

APR 25 2008

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Exhibits in Support

No scanned

Page 48

1  semen.  I took some notes, but then I didn't know

2  where we got on that.

3          THE COURT:  She testified that she tested

4  it with the P-30.

5          THE WITNESS:  Looking for P-30, yes.

6      Q.  You personally did that?  You did the

7  actual testing?

8      A.  Actually we have technicians that assist

9  us in all this testing.

10      Q.  That's my question.  Did the technician

11  do the testing?

12      A.  Yes, the technician did.

13      Q.  Were you present for the testing?

14      A.  No.

15      Q.  You took his results or her results and

16  made them a part of your report?

17      A.  Yes.

18      Q.  Not unlike within your original report I

19  think you had testing with respect to like hair and

20  fiber evidence, correct?

21      A.  I did not do any of that testing.

22      Q.  But the original report that was

23  transmitted to counsel was like a unitary report from



Page 50

1   stain in order to do that test.

2       Q.  And you've testified that you personally

3   didn't do the actual testing, the hands-on testing of

4   that, but you took your technician's results and

5   looked at them.

6       A.  Right.  Our technicians are trained.

7   There's a protocol on how to do this testing.

8       Q.  I hate to belabor this, but you have to

9   understand that I'm --

10          THE COURT:  It's your job.

11      Q.  You're not physically standing there

12  watching him test.  You're in another room or another

13  building even doing maybe DNA work at the time?

14      A.  That's correct.  Our situation is set

15  up -- for example, now technicians are running

16  processes while I'm testifying.

17      Q.  That P-30 testing, can you briefly

18  explain what it does, how it detects the presence of

19  semen?

20      A.  Sure.  The P-30 is a protein that's

21  present, so we take the stain.  The P-30 will be

22  extracted out of the stain.  So the proteins are

23  extracted out and then this ELIZA procedure involves

Page 97

1 specific result.
2     I'm not sure what type of confusion this
3 could lead to in the minds of the jurors. So for
4 that reason, the State would ask the Court to permit
5 her to testify that, in fact, the substance is semen.
6     Moving on to the next point, the State
7 would ask the Court -- and I'll go basically
8 backwards from the way he just approached it. He
9 first spoke about the D-17 probe.
10     Your Honor, the testimony established
11 that identifying this match excludes 97 percent of
12 the population. While one in thirty-two is not one
13 in ten million, one in thirty-two excludes 97 percent
14 of the population.
15     She explained the procedures, the binning
16 procedures used to come up with this conservative
17 statistic. She testified that the F.B.I. only
18 accepts the most conservative statistics in this
19 area.
20     She further testified that this is the
21 method that is accepted in the scientific community.
22 She went into a great deal of testimony about the NRC
23 report and explained the difference between the

Page 98

1 ceiling concept and the fixed binning process, and
2 has also demonstrated her awareness and understanding
3 of the challenges to the ceiling principle, and has
4 testified to the fact that there will shortly be yet
5 another article, another NRC report, questioning --
6 showing that the scientific community is now
7 questioning the ceiling principle.
8     To move to the other end of it, he seeks
9 to have her opinion excluded, her opinion that the
10 defendant cannot be excluded as a contributor to the
11 stain.
12     She explained in great detail that in
13 probe D-17 there is what she refers to as a match.
14 She explained both the visualization process and the
15 quantification process that must occur before she can
16 say there's a match.
17     However, she also explained that there's
18 information at D-5 and D-10 that she used and that
19 she considered in reaching the conclusion that he
20 cannot be excluded.
21     Therefore, that other information is
22 relevant to her opinion that he can't be excluded as
23 a contributor. She further testified that had D-5 or

Page 99

1 D-10 -- had she been unable to visualize the light
2 bands at D-5 or D-10, she would have immediately
3 excluded him, she would have been able to use that to
4 exclude him.
5     She can't because she saw material on
6 those bands, and that visualization is part of her
7 conclusion, and she can explain that -- she did
8 explain that in a way that allowed an understanding
9 of both the testing procedures, the statistics
10 involved and all the other factors that lead the
11 State to ask the Court to allow her to testify.
12     Also that it is her opinion that he can
13 not be excluded, and that in explaining her opinion,
14 she be permitted to testify to the match of D-17 and
15 the information on D-5 and D-10.
16     MR. O'CONNELL: Can I just briefly reply,
17 Your Honor? I'll make it very brief.
18     On the admissibility of the semen
19 evidence, I don't think I did challenge the
20 underlying scientific underpinnings, as it were, of
21 the test. I'm not challenging that.
22     What I'm challenging is on a
23 confrontation basis, what if a female lab technician

Page 100

1 says, "Okay, we got a transmittal letter here, young
2 black male, there's a young black male right over
3 here, I'll use his semen" and throws it in.
4     It probably didn't happen, and that's
5 what she's testifying to. She's familiar with the
6 people that work there. She trusts them, she knows
7 the procedures they operate under, but I can't
8 cross-examine that. I can't cross-examine that
9 individual as to what they did or did not do. That's
10 only one small example.
11     That's exactly why you have the person
12 who performed the test actually testify to the test;
13 not just somebody who got the results of the test and
14 looked at them and ratified them and said "Yes, I see
15 looks like the machine is working correctly and I see
16 that the reading is positive, so it is semen".
17     There are human aspects to this test and
18 she didn't observe those human aspects to it. We
19 just can't presume. The State bears the burden of
20 proof in that area. They should have the technician,
21 the one who actually performs the test testify to
22 that.
23     As to the other bands, I didn't hear any

B-1

9

1    thing except without mentioning the high frequency.

2            MR. O'CONNELL:  Just so I can educate myself

3    later, that Vanderbogart case is at?

4            THE COURT:  Citation?

5            MR. O'CONNELL:  Yes.

6            THE COURT:  A.2d. case, 616483.

7            MR. O'CONNELL:  Thank you.

8            THE COURT:  A 1992 case.

9            MR. O'CONNELL:  So, really, I guess what we

10   need to do is determine that aspect of it out of the

11   jury's presentation, and I understand that I think

12   your person is coming on Wednesday, and we have to

13   deal evidentiary wise with the concept that the sample

14   was consumed, which prohibited the defense from doing

15   any testing.  And how we deal with that, A, how that

16   comes in front of the jury, do I need to bring

17   somebody here to say that we have a report that says

18   that, and, B --

19            THE COURT:  Would you be willing to stipulate

20   to the report?

21            MS. PURCELL:  Of course.

22            MR. O'CONNELL:  Good.

23            THE COURT:  And are you asking for a Hammond

A 51

Page 46

1    Q.  A one-probe match is insufficient in
2   order to reach a conclusion that a person cannot be
3   excluded?
4    A.  No, not to my knowledge.  Nothing that I
5   can find in there says that.
6    Q.  Are you familiar with that report?
7    A.  Yes.
8        I mean it refers to -- it really looks at
9   the other side, the three to five probes may mean
10  identity, but again, that's a whole different
11  ballgame when we start talking about identity.
12   Q.  Can you explain that then?
13   A.  As I said, we don't call identity.
14       Whether I have a six-probe match or
15  one-probe match, I'm not going to take the witness
16  stand and say that's that person's DNA there.  I
17  don't say that, and I don't think that's really the
18  recommendation they're making to do either.
19       What you can do though is give the
20  likelihood of finding this in the population, and if
21  it reaches very, very small frequencies or very large
22  numbers, then people may say, well, that sounds like
23  identity to me, but we don't testify to that.

A-46                    (EX-1

Page 153

1 can exclude this individual, and she is not a source
2 of this DNA. K-3, however, has a band here and a
3 band here.
4        Because I can see them, my next step is
5 to take them in the computer. Actually we do this
6 after all the profiles are done. So after I have all
7 the profiles and I look at them, I then go and size
8 them or take them to the computer.
9        Why do I do that? Because if I took the
10 time to size this and the next one that came off
11 visually doesn't match, I've wasted my time. So I
12 might as well just wait until I see all the
13 information together.
14        Because I didn't see anything along the
15 way that allowed me to exclude this individual as a
16 source, then I took it and sized it with the
17 computer, and when we do that, we put it on there,
18 the computer pretty much as this does, collects the
19 image, places little electronic lines along the
20 ladders.
21        It will place lines here and here and
22 here and here, here and here, and then I measure
23 using these rulers the size of this piece and see if

Page 154

1 it is similar to this one and this one, see if it is
2 similar to this one, this one and this one.
3        If it falls within my matching criteria,
4 then I would say that I have a match at D-17 between
5 the Q-20, Q-21 and the K-3 sample.
6        Q. Did you conduct these tests that you've
7 just explained in accordance with the F.B.I. protocol
8 for DNA profiling?
9        A. Yes, I did.
10       Q. Now, once you moved on to the second tier
11 or the quantitative point, and you fed this
12 information into the computer, did you receive any
13 results?
14       A. The next step after I do this match, the
15 next step or the ultimate step is to determine how
16 common or uncommon those particular bands are in the
17 population.
18       Q. With D-17, did you perform whatever
19 procedures are necessary to lead you to that result?
20       A. Yes, I did.
21       Q. Can you explain to the jury what those
22 procedures are?
23       A. We look at three different population

Page 155

1 groups typically. We look at the appearance of that
2 profile in the Caucasian population group, in the
3 black population group, in the Hispanic population
4 group.
5        So I have determined that the likelihood
6 of finding that particular profile in the black
7 population is one out of thirty-two; in the Caucasian
8 population, it would be one out of 223 individuals
9 would have that profile, and in the Hispanic it would
10 be one out of 69 individuals would have that.
11       Another way of looking at it, for
12 example, in the black population would be three
13 percent. About three percent of the population would
14 have those particular bands showing up. That
15 excludes about 97 percent of the black population.
16       Q. Did you prepare a report that contains
17 the results of your findings?
18       A. Actually in the report I spoke about the
19 fact that I had used one probe to come to the
20 conclusion that I could not exclude the individual
21 who was the source of K-3 as a possible contributor
22 to Q-20 and Q-21.
23       Q. And then does your report contain the

Page 156

1 statistical information you just testified to?
2        A. The notes accompanying the report do. So
3 the notes that I maintain had that information. The
4 report actually does not.
5        MS. PURCELL: May I have this marked for
6 identification please?
7        THE CLERK: State's identification N
8 marked, Your Honor.
9        (F.B.I. REPORT, State's Ex. N for I.D.
10 received and marked)
11       MS. PURCELL: May I approach the witness?
12       Q. I'm handing you State's identification N
13 and I would ask if you could identify that please.
14       A. Yes, this is a report that contains my
15 findings.
16       MS. PURCELL: Your Honor, the State would
17 move the admission of that report.
18       MR. O'CONNELL: No objection.
19       THE COURT: Admitted.
20       THE CLERK: State's Exhibit 8 marked,
21 Your Honor.
22       (F.B.I. REPORT, State's Ex. 8 in Evid.
23 received and marked)

BH 2

## Certificate of Service

I, <u>Kevin Epperson</u>, hereby certify that I have served a true
and correct cop(ies) of the attached: <u>Exhibits in Support</u>
<u>Forma paplis</u> upon the following

parties/person (s):

TO: <u>Clerk of the Court</u>     TO: _____

<u>844 King street</u>     _____

<u>Lockbox 18</u>     _____

<u>Wilm Del 19801</u>     _____

_____     _____

TO: <u>office of Attorney General</u> TO: _____

<u>Carvel state office Bldg</u>     _____

<u>820 N French st</u>     _____

<u>Wilm Del 19801</u>     _____

_____     _____

**BY PLACING SAME IN A SEALED ENVELOPE** and depositing same in the United
States Mail at the Delaware Correctional Center, 1181 Paddock Road, Smyrna, DE
19977.

On this <u>24th</u> day of <u>April</u> _____, 2008

<u>Kevin Epperson</u>